1  LAFAYETTE & KUMAGAI LLP
   GARY T. LAFAYETTE (State Bar No. 88666)
2  Email: glafayette@lkclaw.com
   DUYEN T. NGUYEN (State Bar No. 225368)
3  Email: dnguyen@lkclaw.com
   100 Spear Street, Suite 600
4  San Francisco, California 94105
   Telephone:   (415) 357-4600
5  Facsimile:   (415) 357-4605

6  Attorneys for Defendant
   NATIONAL RAILROAD PASSENGER CORPORATION,
7  aka AMTRAK AND WILFRED HUBBARD

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11 DIANE McKINZY,                          Case No. C10-1866 CW

12           Plaintiff,                    **DEFENDANTS' NOTICE OF
                                           MOTION AND MOTION FOR
13 vs.                                     SUMMARY JUDGMENT OR, IN THE
                                           ALTERNATIVE, PARTIAL
14 NATIONAL RAILROAD PASSENGER             SUMMARY JUDGMENT;
   CORPORATION, also known as AMTRAK,      MEMORANDUM OF POINTS AND
15 WILFRED HUBBARD, DOES I through X,      AUTHORITIES IN SUPPORT
   inclusive,                              THEREOF**
16
             Defendants.                   Date:         July 28, 2011
17                                         Time:         2 p.m.
                                           Courtroom:    2 (4th Floor)
18                                         Judge:        Hon. Claudia Wilken

19                                         Complaint filed: December 18, 2009
                                           Trial date:      January 23, 2012
20

21

22

23

24

25

26

27

28

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

**TABLE OF CONTENTS**

Page

I.      Notice of Motion and Motion .................................................................... 1

II.     Statement of Relief Sought ..................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES**

III.    Introduction and Summary of Argument ................................................ 2

IV.     Statement of Issues ................................................................................ 4

V.      Statement of Undisputed Facts .............................................................. 4

        A.      Background ................................................................................. 4

        B.      Plaintiff's Employment Application Contained Untruthful Statements .......... 5

        C.      Plaintiff's Performance Issues ................................................... 5

        D.      Plaintiff's Claims of Sexual Harassment .................................... 7

        E.      Plaintiff Never Complained About Harassment Despite Being Aware Of
                Defendant's Anti-Harassment Policies ....................................... 8

        F.      Procedural History ..................................................................... 9

VI.     LEGAL ARGUMENT ........................................................................... 9

        A.      Summary Judgment Standard .................................................... 9

        B.      Plaintiff's Sexual Discrimination Claim Lacks Merit ................. 9

                1.      Plaintiff Cannot Establish A *Prima Facie* Case
                        Of Gender Discrimination ................................................ 10

                        a)      Plaintiff Was Not Competently Performing Her Job ............. 10

                        b)      Plaintiff Cannot Demonstrate That Others Similarly Situated
                                Were Treated More Favorably ................................... 11

                2.      Legitimate Business Reasons Exist For Disapproving Plaintiff's
                        Employment Application ................................................. 11

                3.      Plaintiff Cannot Establish Discriminatory Pretext ............. 12

        C.      Retaliation In Violation Of FEHA ........................................... 14

                1.      No Causal Link Between Protected Activity And Disapproval of
                        Plaintiff's Application ................................................... 14

        D.      Plaintiff's Sexual Harassment Claim Lacks Merit ..................... 14

i

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

LAFAYETTE & KUMAGAI LLP
ATTORNYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1.     No Evidence Employer Knew Or Should Have Known
       Of Harassment ................................................................................14

2.     The Avoidable Consequences Doctrine Provides
       A Complete Defense ........................................................................15

3.     Plaintiff Was Not Subjected To A Hostile Work Environment ..........16

E.     Failure To Prevent Harassment And Discrimination Under The FEHA ......19

F.     Unlawful Discharge In Violation Of Public Policy ...........................................19

G.     Plaintiff's Breach Of Covenant Of Good Faith And Fair
       Dealing Claim Fails ...........................................................................................19

H.     The Federal Employers' Liability Act ("FELA") Preempts Plaintiff's Causes
       of Action for Negligent and Intentional Infliction Of Emotional Distress,
       Negligent Hiring, Training And Supervision and Assault and Battery .........20

I.     Alternatively, Plaintiff Will Be Unable To Establish Viable Causes Of Action
       Directly Against Hubbard For Negligent and Intentional Infliction of
       Emotional Distress and Assault And Battery ..................................................21

1.     Infliction of Emotional Distress .........................................................21

2.     Assault and Battery ............................................................................22

J.     Plaintiff's Claim For Punitive Damages Against Hubbard Fails.....................23

VII.   Conclusion ...............................................................................................................23

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

Abate v. Southern Pacific Transp. Co., 993 F.2d 107, 112 (5th Cir. 1993)-------------------------- 20

Anderson v. Family Dollar Stores of Arkansas, Inc. 579 F.3d 858, 862 (8th Cir. 2009) ---------- 18

Baker v. Weyerhauser Co., 903 F.2d 1342, 1346 (10th Cir. 1990) ------------------------------------- 15

Bloom v. Consolidated Rail Corp., 812 F.Supp. 553, 557(1993), rev'd on other grounds, 41 F.3d

    911 (1994) -------------------------------------------------------------------------------------------------------- 21

Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000) ------------------------------------------- 17

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), cert. denied, 484 U.S. 1066 (1988) ------------9

Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000)--------------------------------------- 10

Consolidated Rail Corporation v. Gottshall, 512 U.S. 532, 550, 114 S.C.T. 2396, 2407, 129

    L.Ed.2d. 427 (1994)---------------------------------------------------------------------------------------------- 20

Corbitt v. Home Depot U.S.A., Inc., 573 F.3d 1223, 1241 (11th Cir. 2009) ------------------------- 18

Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1037 (9th Cir. 2005) ------------- 9, 10

Downes v. F.A.A., 775 F.2d 288, 293 (D.C. Cir. 1985) -------------------------------------------------- 18

Eli Lilly & Co., 481 F.3d 556, 559 (7th Cir. 2007)------------------------------------------------------10, 11

Goodwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) ------------------------------- 12

Huston v. Proctor & Gamble Paper Products Corp, 568 F.3d 100, 105, fn. 4 (3rd Cir. 2009)---- 15

Jones v. Flagship Intern., 793 F.2d 714, 720 (5th Cir. 1986) -------------------------------------17, 18

Katz v. Dole, 709 F.2d 251, 256 (4th Cir. 1983)--------------------------------------------------------- 14

Lyons v. England 307 F.3d 1092, 1112 (9th Cir. 2002) ------------------------------------------------- 10

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)--------9

Mockler v. Multnomah County, 140 F.3d 808, 812 (9th Cir. 1998) ------------------------------------ 14

Nordgren v. Burlington Northern R.R. Co., 101 F.3d 1246 (8th Cir. 1996)------------------------- 20

Ochsrider v. Reading Co., 172 F.Supp.830, 832 (E.D.Pa. 1959)--------------------------------------- 21

iii

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1   Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1194 (9th Cir. 2003) ------ 12

2   Rabidue v. Osceola Refining Co., 805 F.2d 611, 615 (6th Cir. 1986)--------------------------------- 18

3   St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) --- 10

4   Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207

5      (1981) ------------------------------------------------------------------------------------------------------- 10

6   Vincent v. Brewer Co., 514 F.3d 489, 494 (6th Cir. 2007)------------------------------------------------ 10

7   Walker v. Regent, 410 F.3d 387, 394 (7th Cir.  2005)-----------------------------------------------12, 13

8   State Cases

9   Alcorn v. Anbro Eng., Inc., 2 Cal.3d 493, 497-499 fn. 5 (1970) ---------------------------------- 21

10  Arteaga v. Brink's, Inc., 163 Cal.App.4th 327, 352 (2008) ----------------------------------------- 11

11  Barouh v. Haberman, 26 Cal.App.4th 40, 44 (1994)------------------------------------------------------- 23

12  Brokaw v. Saks Fifth Ave., 1993 WL 87815, *4 (N.D.Cal. 1993)------------------------------------- 11

13  Burgess v. Sup. Ct. (Gupta) (1992) 2 Cal.4th 1064, 1072, 9 CR2d 615, 618----------------------- 22

14  Etter v. Veriflow Corp., 67 Cal.App.4th 457, 465 (1998) ----------------------------------------------- 17

15  Fisher v. San Pedro Peninsula Hospital, 214 Cal.App.3d 590, 610 (1989) --------------------------- 17

16  Fluharty v. Fluharty, 59 Cal.App.4th 484, 497 (1997)---------------------------------------------------- 23

17  Haberman v. Cengage Learning, 180 Cal.App.4th 365, 389 (2009)----------------------------------- 21

18  Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009) ------------------------------------------------------------- 21

19  Kuhn v. Department of Gen. Services, 22 Cal.App.4th 1627, 1637 (1994) ------------------------- 20

20  Lowry v. Standard Oil Co. of Calif., 63 Cal.App.2d 1, 6-7 (1944) ------------------------------------ 22

21  Monarch v. Southern Pac. Transp. Co., 70 Cal.App.4th 1197, 1209 (1999)------------------------- 20

22  Moore v. May Dept. Stores Co., 222 Cal.App.3d 836, 840 (1990) ------------------------------------ 11

23  Morgan v. Regents of Univ. of Calif., 88 Cal.App.4th 52, 73 (2000) -------------------------------- 14

24  Pugh v. See's Candies, Inc., 116 Cal.App.3d 311, 324-325 (1981) ------------------------------------ 11

25  Smith v. City & County of San Francisco, 225 Cal.App.3d 38, 49 (1990) -------------------------- 20

26  Soules v. Cadam, Inc, 2 Cal.App.4th 390, 403-404 (1992) --------------------------------------------- 19

27  State Department of Health Services v. Superior Court, 31 Cal.4th 1026, 1043-1044 (2003)---- 16

28

iv

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

Thing v. La Chusa, 48 Cal.3d 644, 649 (1989) ------------------------------------------- 22

Trujillo v. North County Transit Dist., 63 Cal.App.4th 280, 288-289 (1998) ------------------ 19

Yanowitz v. L'Oreal USA, Inc. 36 Cal.4th 1028, 1044 (2005) ------------------------------- 14

**Federal Statutes**

45 U.S.C. §51 ----------------------------------------------------------------------------- 20

Rest.2d Torts §46(1) ---------------------------------------------------------------------- 21

**California Statutes**

Ca. Govt. Code §12940(h) ---------------------------------------------------------------- 14

Ca. Govt. Code §12940(j) ----------------------------------------------------------------- 15

Ca. Govt. Code §12940(j)(1) ------------------------------------------------------------14, 16

Ca. Govt. Code §12940(k) ---------------------------------------------------------------- 19

**Other**

BAJI 2.80 -------------------------------------------------------------------------------- 22

BAJI 7.50 -------------------------------------------------------------------------------- 23

Fed. R. Civ. P 56(c) ------------------------------------------------------------------------9

CACI 1300 ------------------------------------------------------------------------------- 23

CACI 1301 ------------------------------------------------------------------------------- 22

CACI 1600 ------------------------------------------------------------------------------- 21

CACI 1620 ------------------------------------------------------------------------------- 22

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

v

## I.   NOTICE OF MOTION AND MOTION

TO PLAINTIFF DIANE MCKINZY

NOTICE IS HEREBY GIVEN that on July 28, 2011 at 2 p.m. or as soon thereafter as counsel may be heard by the above-entitled Court, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 2 (4th Floor), Oakland, California, Defendants National Railroad Passenger Corporation ("Amtrak") and Wilfred Hubbard ("Hubbard") (collectively, "Defendants") will and hereby do move the Court for summary judgment, or in the alternative, partial summary judgment of the following claims, filed by Plaintiff Diane McKinzy ("Plaintiff") against Amtrak for:

- Violation of the California Fair Employment and Housing Act;
- Breach of Covenant of Good Faith and Fair Dealing;
- Violation of Public Policy;
- Negligent Infliction of Emotional Distress;
- Intentional Infliction of Emotional Distress; and
- Negligent Hiring, Training and Supervision; and, against

Hubbard for:

- Negligent Infliction of Emotional Distress;
- Intentional Infliction of Emotional Distress;
- Assault and Battery;
- Punitive damages arising from intentional infliction of emotional distress and assault and battery

Defendants are entitled to the requested relief because there are no triable issues of material fact and/or law with regard to any of Plaintiff's claims.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the declarations of Duyen T. Nguyen, Al Sturken, Charles Herndon, Wilfred Hubbard, Elias Munoz, Susan Venturelli and Beverly Duffin, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

## II.   STATEMENT OF RELIEF SOUGHT

Defendants respectfully request that this Court enter summary judgment in Defendants' favor as to the entirety of Plaintiff's complaint, or in the alternative, grant Defendants' motion

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-1866 CW)

1

1   for partial summary judgment of claims.

2                    **MEMORANDUM OF POINTS AND AUTHORITIES**

3   **III.    INTRODUCTION AND SUMMARY OF ARGUMENT**

4           Plaintiff alleges that her former employer, Amtrak, is liable for gender discrimination,

5   sexual harassment, retaliation, failure to take corrective action, unlawful discharge in violation of

6   public policy, intentional and negligent infliction of emotional distress and negligent hiring,

7   training and supervision.  Plaintiff also alleges that her former co-worker, Hubbard, is liable for

8   intentional and negligent infliction of emotional distress, assault and battery and punitive

9   damages. Plaintiff's claims lack merit.

10          Plaintiff's claim for gender discrimination fails because Plaintiff admits she failed to

11  properly perform her job duties and admits she cannot demonstrate that similarly situated

12  employees were treated more favorably.  Plaintiff came to work late, failed to wear the proper

13  work attire, failed to remove an important train tag, failed or delayed notifying the engineer of

14  train track restrictions, and missed a call to come to work, conduct which Plaintiff cannot deny.

15  Plaintiff's gender discrimination claim also fails because, as Plaintiff admits, Amtrak had

16  legitimate business reasons for requiring employees to perform according to its standards and

17  procedures and that she did not otherwise.  Plaintiff cannot establish discriminatory bias by any

18  of her superiors.

19          Plaintiff's claim for retaliation fails because she admits she didn't complain of sexual

20  harassment until after the decision to disapprove her application had already been made and

21  cannot otherwise prove that the individuals who terminated her had knowledge of any alleged

22  sexual harassment prior to the disapproval of her application nor that they harbored any bias

23  against her.

24          Plaintiff's claim for co-worker sexual harassment by Hubbard fails because she cannot

25  demonstrate that Amtrak had any knowledge of any alleged sexual harassment prior to the

26  disapproval of her employment application.  To the extent Plaintiff contends Hubbard was a

27  supervisor, which she cannot prove, and that Amtrak is strictly liable for his conduct, Plaintiff's

28  claim fails because the avoidable consequences doctrine provides a complete bar.  Plaintiff's

2

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1  claim for sexual harassment also fails because the totality of the alleged improper conduct of

2  three comments and one alleged touching, which conduct Hubbard denies and for which there

3  are no witnesses, even if true, is not severe or pervasive so as to alter the conditions of her

4  employment and create an abusive working environment.

5       Similarly, Plaintiff's claims for failure to prevent harassment and discrimination under the

6  FEHA and unlawful discharge in violation of public policy fail because she is unable to establish

7  viable causes of action for discrimination and/or sexual harassment.

8       Plaintiff's claim for breach of the covenant of good faith and fair dealing fails because

9  Plaintiff can present no evidence of an oral, written and/or implied contract of employment.

10  Plaintiff admits she was hired on a probationary basis.  Moreover, to the extent Plaintiff claims

11  she had passed probation and was entitled to union membership, this claim would be preempted

12  by the collective bargaining agreement entered into between Amtrak and the union.

13       Plaintiff's causes of action against Amtrak and Hubbard for negligent and intentional

14  infliction of emotional distress, against Amtrak for negligent hiring, training and supervision and

15  against Hubbard for assault and battery, fail because each claim is preempted by the Federal

16  Employers' Liability Act.

17       Additionally, Plaintiff's causes of action against Hubbard for negligent and intentional

18  infliction of emotional distress and assault and battery fail because she cannot demonstrate the

19  required elements under each claim.  Plaintiff cannot establish that the one alleged touching by

20  Hubbard constitutes extreme and outrageous conduct.  Additionally, Plaintiff admits she did not

21  see Hubbard touch her and cannot establish any negligent or intentional conduct by Hubbard.

22  Plaintiff cannot also demonstrate that Hubbard intended to touch her with the intent to cause

23  apprehension or to injure her.  In fact, Plaintiff admits Hubbard immediately apologized for the

24  alleged touching.  Hubbard denies any improper touching of Plaintiff.

25       As Plaintiff is unable to establish viable causes of action for intentional infliction of

26  emotional distress and assault and battery against Hubbard, her punitive damages allegation

27  against Hubbard arising out of these specific causes of action fail as well.

28  ///

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

3

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

## IV.     STATEMENT OF ISSUES

- Whether Defendant Amtrak is entitled to summary judgment with regard to Plaintiff's claim for sex discrimination.

- Whether Defendant Amtrak is entitled to summary judgment with regard to Plaintiff's claim for retaliation.

- Whether Defendant Amtrak is entitled to summary judgment with regard to Plaintiff's claim for sexual harassment.

- Whether Defendant Amtrak is entitled to summary judgment with regard to Plaintiff's claim for failure to prevent harassment and discrimination under the FEHA.

- Whether Defendant Amtrak is entitled to summary judgment with regard to Plaintiff's claim for wrongful discharge in violation of public policy.

- Whether Defendant Amtrak and/or Hubbard are entitled to summary judgment with regard to Plaintiff's claim for intentional infliction of emotional distress.

- Whether Defendants Amtrak and/or Hubbard are entitled to summary judgment with regard to Plaintiff's claim for negligent infliction of emotional distress.

- Whether Defendant Amtrak is entitled to summary judgment with regards to Plaintiff's claim for negligent hiring, training and supervision.

- Whether Defendant Hubbard is entitled to summary judgment with regards to Plaintiff's claim for assault and battery.

- Whether Defendant Hubbard is entitled to summary judgment with regards to Plaintiff's claim for punitive damages against him arising from her causes of action for intentional infliction of emotional distress and assault and battery.

## V.     STATEMENT OF UNDISPUTED FACTS

### A.     Background

Plaintiff began work as a probationary assistant conductor on Amtrak's Oakland line on October 1, 2007 in accordance with a letter which stated:

> Based on your collective bargaining agreement, your first 90-120 days of employment including training are considered a probationary period.  You must join and maintain membership in the collective bargaining agent representing your craft, within sixty

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-1866 CW)

4

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

calendar days after you first perform compensated service in this position." (Exh. A to Declaration of Beverly Duffin In Support Of Defendants' Motion for Summary Judgment, "Duffin Decl.")   Plaintiff did not pass probation and was not extended an offer of employment at the Oakland location.  (Plt's depo at 66:3-12, 108:22-109:25, 122:7-9.)  Instead, she was given the chance to pursue an opportunity in San Francisco.  However she was told that because she did not pass probation in Oakland she would have to start her probation all over again in San Francisco under new supervision.  (Plt's depo at 67:20-69:2; 110:1-7; 123:5-124:1.) Pursuant to Amtrak's attendance schedules, on March 2008, Plaintiff commenced her probation as an assistant conductor on Amtrak's Caltrain line which ran from San Francisco to San Jose and back.  (See Exh. A and ¶3 to Declaration Of Al Sturken In Support Of Defendants' Motion For Summary Judgment at  ("Sturken Decl.").)  As detailed below, she failed to competently perform her job duties on the San Francisco line, *i.e.* she was late numerous times to work, wore improper work attire, had problems with calling out a train signal and missed a call to come to work, and thus on June 6, 2008, and at the end of her probationary period, her application for employment was disapproved.  (Plt's depo at 150: 2-154:14; 178:13-180:3; 258:25-260:9; 273:7-274:3; 294:9-22; 299:4-300:18; Depo Exh.[1] 3; Sturken Decl. at ¶ 5-8; Herndon Decl. at ¶3-4.)

**B.    Plaintiff's Employment Application Contained Untruthful Statements**

Amtrak's employment application asked Plaintiff to identify the names, dates and locations of employers from where she had been "terminated or asked to resign from employment for any reason."  Plaintiff responded on her application that she had never been terminated or asked to resign from employment.  (Depo Exh. 2.)  In her deposition, Plaintiff admits her response was untruthful and that a few years earlier she had been fired from a prior employer, Healthcare Security Services.  (Plt's depo at 34:19-38:20, 333:21-338:22)

**C.    Plaintiff's Performance Issues**

The "Amtrak Standards of Excellence" booklet, which Plaintiff acknowledged receiving, provides among other things, that employees "have an obligation to perform [their] duties

---

[1] All references to "Depo Exh." herein refer to the deposition exhibits attached to Plaintiff's deposition transcript, which are attached as **Exhibit A** to the accompanying Declaration of Duyen T. Nguyen In Support Of Defendants' Motion For Summary Judgment ("Nguyen Decl.").

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-1866 CW)

5

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1   properly and in accordance with the standards set for [their] particular job," to "report to work on

2   time and perform [their] duties during our assigned hours." (Exhs. A and B to Declaration Of

3   Sue Venturelli In Support of Defendants' Motion For Summary Judgment ("Venturelli Decl.");

4   Exh. C to Sturken Decl.) Additionally, Amtrak's General Code of Operating Rules 1.15 states

5   that "Employees must report for duty at the designated time and place with the necessary

6   equipment to perform their duties . . . [and that the] [c]ontinued failure by employees to protect

7   their employment will be cause for dismissal.  Lastly, Rule 1.16 states "Employees subject to

8   call [such as Plaintiff] must indicate where they can be reached and must not be absent from their

9   calling place without notifying those required to call them." (Exh. B to Sturken Decl.)

10       Plaintiff admits she understood the importance of complying with Amtrak's rules and

11  procedures, that there are no exceptions to these rules and that it would be appropriate for an

12  employer to fire an employee if they do not comply with the rules.  (Plt's depo at 62:12-66:2.)

13  Plaintiff also admits it was especially important to perform her best during probation because she

14  was being evaluated for permanent hire.   (Plt's depo at 66:3-25.)

15       On May 21, 2008, Plaintiff received a Letter of Counseling reminding her of her

16  responsibilities pursuant to Amtrak's Code of Operating Rules 1.15 and 1.16 and Amtrak's

17  Standards of Excellence booklet. (Plt's depo at 303:10-304:6; Depo Exh. 5.)  Her performance

18  did not improve. A week after receiving the letter, she showed up 29 minutes late to work. (Plt's

19  depo at 312:10-317:19; Depo Exh. 3.)  And the day after that on May 30, she was cited for

20  missing a call to show up at work. (Plt's depo at 312:10-317:19; Depo Exh. 3.) As a result, on

21  June 6, 2008, Mark Collins, Amtrak's Assistant Superintendent, wrote and advised Plaintiff that

22  her application for employment was disapproved and attached a document identifying the

23  following performance deficiencies noted during Plaintiff's probation:

24       • On April 2, 2008, she missed removing a tag from the train switch;

25       • On April 19, 2008, she arrived 43 minutes late to work;

26       • On May 2, 2008, she reported 18 minutes late to work;

27       • On May 2, 2008, she missed calling out a train restriction;

28       • On May 12, 2008, she reported 15 minutes late to work;

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

6

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1    • On May 14, 2008, she showed up 10 minutes late and with the wrong work shoes;

2    • On May 21, 2008, she was again late for work;

3    • On May 29, 2008, she arrived 29 minutes late for work; and

4    • On May 30, 2008, she missed a call to show up to work.

5    (Depo Exh. 3.)

6        Plaintiff is unable to deny these documented instances of her performance deficiencies.

7    (*Id.*)  She further admits she was late to work and wore the wrong shoes to work on at least two

8    separate occasions.  (Plt's depo at 150: 2-154:14; 178:13-180:3; 258:25-260:9; 273:7-274:3)

9        **D.    Plaintiff's Claims of Sexual Harassment**

10       Plaintiff claims her cause of action for sexual harassment/hostile environment under

11   FEHA against Amtrak[2] arises out of alleged conduct she claims took place when she worked with

12   Hubbard on the trains departing from San Francisco from March 1, 2008 to May 31, 2008.   (Exh.

13   B to Declaration of Duyen T. Nguyen In Support of Defendants' Motion For Summary Judgment

14   ("Nguyen Decl.").)  Hubbard was a conductor and had no supervisor responsibility over Plaintiff.

15   (Plt's depo at 164:20-24; 168:10-169:25.)  Hubbard denies the allegation and Plaintiff admits

16   there were no witnesses.  (Hubbard Decl. at ¶8; Plt's depo at 203:1-16; 231:4-233:11; 238:1-7;

17   274:12-14.)

18       Regardless, the undisputed facts show that whatever happened between the two of them

19   did not rise to the level of sexual harassment.  First, the two worked together infrequently.  The

20   Amtrak attendance schedules, which Plaintiff admits accurately reflect the days and with whom

21   she worked on a particular train, show that between March 1, 2008 and May 31, 2008, Plaintiff

22   and Hubbard worked together only *two* times: on April 16 and April 19, 2008.  (Plt's depo at

23   127:20-129:7; Exhs. F and G to Sturken Decl.)

24       Plaintiff then testified in her deposition that her claim of sexual harassment is based on

25   only three instances of Hubbard telling her he wanted to have "intimacy" and/or sexual

26   intercourse with her and one instance of an alleged touching.  (Plt's depo at 207:13-208:3; 231:4-

27

28   [2] Plaintiff does not allege a separate sexual harassment cause of action against Hubbard.                7

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

7; 237:20-238:2; 243:8-244:7; 274:12-14.)  Thus, these occurrences could have occurred only during one of or both of the two times they worked together on April 16 and April 19, 2008. (Exhs. F and G to Sturken Decl.)

     **E.**    **Plaintiff Never Complained About Harassment Despite Being Aware Of Defendant's Anti-Harassment Policies**

     The "Amtrak Standards of Excellence" booklet distributed to Plaintiff provides, among other things, that Amtrak "will not tolerate discrimination or harassment *of any kind* by our employees toward our customers or coworkers, including but not limited to racial, ethnic, religious or sexual slurs, whether written or spoken." (Exhs A and B to Venturelli Decl.) Plaintiff admits that the available avenues for her to complain if she had an issue with another employee were to complain to (1) management, (2) human resources, (3) via the Amtrak hotline, or (4) to the union.  (Plt's depo at 166:6-168:3.)  She acknowledges the trainmaster is the only management person on the train and those persons were Al Sturken (San Francisco location) or Charles Herndon (San Jose location).  (Plt's depo at 123:5-124:1; 150:2-8; 168:10-169:8.) Plaintiff admits that prior to the disapproval of her employment application, she utilized none of these avenues of complaint.  (Plt's depo at 319:7-320:13; 321:1-323:3.)  She admits that she merely attempted to contact Sturken and Herndon to complain by leaving voicemail messages for them to call her back but she never informed them of any alleged sexual harassment.  (Plt's depo at 171:7-174:19; *see also* DFEH charge and EEOC in-take questionnaire attached as Exh. A Declaration of Elias Munoz In Support of Defendants' Motion For Summary Judgment ("Munoz Decl.")[3] and Exh. C to Nguyen Decl., respectively.)  Herndon and Sturken however never received a voice message from Plaintiff asking them to call her back nor were they aware of any alleged sexual harassment directed at Plaintiff during the time she worked at Amtrak's San Francisco location.  (Sturken Decl. at ¶12 and Herndon Decl. at ¶8.).

     Indeed, Plaintiff admits she never complained to human resources about Hubbard until after she was fired.  (Plt's depo at 319:7-320:13.)

---

[3] Exhibit A to Munoz Decl. is also attached as exhibit D to the Nguyen Decl.

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-1866 CW)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

**F.     Procedural History**

On December 17, 2008, Plaintiff filed a complaint with the DFEH alleging harassment and discrimination pursuant to Title VII of the Civil Rights Act of 1964.  (Exh. A to Munoz Decl.)  On January 6, 2009, the Department of Fair Employment and Housing Act issued Plaintiff a Right-To-Sue Notice.  (Exh. B to Munoz Decl.)  On December 18, 2009, Plaintiff filed a judicial complaint initiating this lawsuit in San Francisco Superior Court.  (Ex. B to Nguyen Decl.)  On April 30, 2010, the action was removed to federal court.  On November 30, 2010, the EEOC issued its determination that "[b]ased on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes" enforced by the EEOC and issued Plaintiff a Notice of Suit Rights.  (Exh. C to Munoz Decl.)

## VI.     LEGAL ARGUMENT

**A.     Summary Judgment Standard**

In a motion for summary judgment, the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P 56(c).  The moving party bears the burden of identifying those facts that it believes demonstrate the absence of a genuine issue of material fact, but the burden is on the party opposing a motion for summary judgment to designate "specific facts showing that there is a genuine issue for trial."  _Celotex Corp. v. Catrett,_ _477 U.S. 317, 324 (1986), cert. denied, 484 U.S. 1066 (1988)_.  Summary judgment is proper here as there are no genuine issues of material fact as to any of Plaintiff's claims.

**B.     Plaintiff's Sexual Discrimination Claim Lacks Merit**

To defeat a motion for summary judgment in a disparate treatment discrimination case, a plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's decision or, alternately, may rely on the burden-shifting framework set forth in _McDonnell Douglas Corp. v. Green,_ 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); _Dominguez-Curry v. Nevada Transp. Dept.,_ 424 F.3d 1027, 1037 (9th Cir. 2005).  Under the latter framework, a plaintiff must first make a _prima facie_ case

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

9

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

of discrimination. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). The *prima facie* case then creates a rebuttable presumption of discrimination, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Lyons v. England* 307 F.3d 1092, 1112 (9th Cir. 2002), citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer meets this burden, the presumption of unlawful discrimination "simply drops out of the picture" and the plaintiff must produce sufficient evidence to raise a triable issue of fact as to whether the proffered nondiscriminatory reason is a mere pretext for discrimination. *Dominguez-Curry, supra,* 424 F.3d at 1037; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

> 1.    **Plaintiff Cannot Establish A *Prima Facie* Case Of Gender Discrimination**

To establish a *prima facie* case of gender discrimination, Plaintiff must show that: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007); *v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007).

> a)    **Plaintiff Was Not Competently Performing Her Job**

Plaintiff will be unable to establish that she was competently performing her job duties. Plaintiff admits Amtrak had legitimate reasons for requiring among other things, that employees appear for work on time, wear the proper uniform, and timely inform the engineer on the train of any anticipated track restrictions. She acknowledges that an employer has a right to terminate an employee who does not follow its rules. (Plt's depo at 62:12-66:2, 287:19-290:12) She admits she failed to follow Amtrak's rules. She admits she was late to work and wore improper work attire. (Plt's depo at 150:2-154:14; 178:13-180:3; 258:25-260:9; 273:7-274:3.) She also cannot deny the conduct which was the basis for Amtrak's decision to disapprove her application: over a three month period (i) she arrived late to work at least six times, and was late anywhere from 10

10

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1   to 43 minutes; (ii) she wore the incorrect shoes to work; (iii) she failed to remove a tag from a

2   train switch; (iv) she failed to or delayed calling out a train track restriction; and (v) she was cited

3   for missing a call to come to work. (Depo Exh. 3; Plt's depo at 150: 2-154:14; 178:13-180:3;

4   258:25-260:9; 273:7-274:3; 294:9-22; 299:4-300:18; Sturken Decl. at ¶ 5-8; Herndon Decl. at ¶3-

5   4.) Even after she received a letter of counseling for her performance, she failed to correct her

6   conduct. (Plt's depo at 312:10-317:19; Depo Exhs. 3 and 5; Sturken Decl. at ¶7.) A week after

7   receiving the letter of counseling, she arrived 29 minutes late for work. (*Id.*) The day after being

8   29 minutes late for work, she was cited for missing a call to come to work. (*Id.*)

9          The evidence is uncontroverted that at the end of her probation period, Plaintiff's

10  application for employment with Amtrak was disapproved because she failed to properly perform

11  her job duties. (Depo Exh. 3; Plt's depo at 150: 2-154:14; 178:13-180:3; 258:25-260:9; 273:7-

12  274:3; 294:9-22; 299:4-300:18; Sturken Decl. at ¶ 5-8; Herndon Decl. at ¶3-4.)

13           **b)**    **Plaintiff Cannot Demonstrate That Others Similarly Situated**
                   **Were Treated More Favorably**

14

15         Plaintiff will be unable to establish that others similarly situated to her were treated more

16  favorably. In fact, she admits she is not aware of other individuals with her same performance

    deficiencies who passed probation. (Plt's depo at 283:25-284:2)

17

18           **2.**    **Legitimate Business Reasons Exist For Disapproving Plaintiff's**
                   **Employment Application**

19         Termination of an employee who violates established company procedures has been held

20  to constitute a legitimate business reason. *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 324-

21  325 (1981) (an employer's dissatisfaction with an employee's services constitutes just cause for

22  termination); *Arteaga v. Brink's, Inc.*, 163 Cal.App.4th 327, 352 (2008) (loss of confidence is a

23  legitimate business reason for termination); *Moore v. May Dept. Stores Co.*, 222 Cal.App.3d 836,

24  840 (1990) (violation of company's security procedures was good cause for termination); *Brokaw*

25  *v. Saks Fifth Ave.*, 1993 WL 87815, *4 (N.D.Cal. 1993) ("plaintiff's violation of an express,

26  written company policy concerning the marking down of merchandise was just cause for her

27  termination.").

28         Plaintiff acknowledged receiving a copy of Amtrak's Standards of Excellence which

                                                                                 11

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

1   sets forth among other things, Amtrak's policy requiring employees to report to work on time and

2   to provide advance notice of any attendance issues.  (Exhs. A and B to Venturelli Decl.; Exh. C

3   to Sturken Decl.)  Amtrak's General Code of Operating Rules further provides that employees

4   must report for work on time and that employees who are on call must not be absent from their

5   calling place without advance notice.  (Exh. B to Sturken Decl.)  Plaintiff admits that legitimate

6   business reasons exist for such rules and that problems result when employees fail to adhere to

7   these rules. (Plt's depo at 62:12-66:2.)  Plaintiff admits that especially in the train industry,

8   timeliness is paramount because trains naturally must leave on schedule.  (Plt's depo at 62:12-

9   63:22.)  Plaintiff also admits that on a train, even a minute delay in informing the engineer of a

10   track restriction could compromise another person's safety.  (Plt's depo at 287:19-290:12.)

11   Plaintiff admits that there are no exceptions to these rules and it is appropriate for an employer to

12   fire employees who don't follow its rules.  (Plt's depo at 64:11-66:2.)    Plaintiff admits she was

13   late to work and failed to properly wear the appropriate work attire.  (Plt's depo at 150:2-154:14;

14   178:13-180:3; 258:25-260:9; 273:7-274:3)  Plaintiff is also unable to deny the documented

15   instances of her other performance deficiencies, *i.e.* failing to remove a tag from the train switch,

16   missing or delaying alerting the engineer to train track restrictions, missing a call to come to

17   work.  (Depo Exh. 3; Plt's depo at 294:9-22; 299:4-300:18.)

18           **3.     Plaintiff Cannot Establish Discriminatory Pretext**

19           Plaintiff can prove discriminatory pretext *either directly,* by showing that unlawful

20   discrimination more likely motivated the employer; or *indirectly,* by showing that the employer's

21   proffered explanation is "unworthy of credence' (e.g., because it is internally inconsistent or

22   otherwise unbelievable);  *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185,

23   1194 (9th Cir. 2003).  Direct evidence typically consists of remarks made by decisionmakers

24   displaying bias or motive. *Goodwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)

25   Circumstantial evidence supporting an inference of discriminatory intent comprises "suspicious

26   timing, ambiguous statements oral or written, behavior toward or comments directed at other

27   employees in the protected group, and other bits and pieces from which an inference of

28   discriminatory intent might be drawn." *Walker v. Regent*, 410 F.3d 387, 394 (7th Cir.  2005).

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

12

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

1    First, Plaintiff can point to no direct remarks by any of her superiors demonstrating any

2 bias or motive against her. (Plt's depo at 152:7-154:14; 281:17-284:2; 316:1-317:19; Sturken

3 Decl. at ¶¶ 5-6, 12-15; Herndon Decl at ¶¶ 3-9.)

4    Second, Plaintiff can point to no circumstantial evidence demonstrating that any of her

5 superiors harbored any discriminatory intent towards her. (*Id.*)  Plaintiff claims that she never

6 saw Al Sturken, the trainmaster and her boss on the San Francisco line, at all.  (Plt's depo at

7 316:2-12.)  By this claim, Plaintiff acknowledges that she can point to no behavior or statements

8 by him towards her that would demonstrate discriminatory bias.  Most importantly, Plaintiff also

9 admits that she didn't complain of any sexual harassment to either Sturken or Herndon prior to

10 being informed her application for employment had been disapproved.  (Plt's depo at 171:7-

11 174:19.)  Neither Sturken nor Herndon had any knowledge of her sexual harassment allegations

12 prior to the disapproval of her employment application.  (Sturken Decl. at ¶ 12-14 and Herndon

13 Decl. at ¶5-8.)  Plaintiff claims she had left a voicemail message for them to call her back but

14 admits she never actually informed them of any alleged sexual harassment in her voice messages.

15 (Plt's depo at 171:7-174:19; Exhs. A to Munoz Decl. and Exh. C to Nguyen Decl.)  Neither

16 Sturken nor Herndon however ever received these voice messages.  (Sturken Decl. at ¶ 12 and

17 Herndon Decl. at ¶8.)  Both Sturken and Herndon deny any biases against Plaintiff.  (Sturken

18 Decl. at ¶15 and Herndon Decl. at ¶9.)

19    Plaintiff also admits that no evidence exists demonstrating that Amtrak's assistant

20 superintendent, Mark Collins, who signed the written letter disapproving her application for

21 employment harbored any discriminatory bias against her.  She admits that she never informed

22 him nor does she know if anybody ever told him of any alleged sexual harassment she may have

23 experienced.  (Plt's depo at 282:10-283:1.)  She also admits she has no information that Collins

24 based his decision to disapprove her application for employment on information other than what

25 was documented in her performance records.  (Plt's depo at 283:11-13.)

26    Thus, Plaintiff can point to no timing, words, conduct, or behavior by any of her superiors

27 that indicates discriminatory bias towards her.

28    **C.    Retaliation In Violation Of FEHA**                                                    13

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

1        The FEHA provides that "[i]t shall be an unlawful employment practice . . . [f]or any

2 employer . . . to discharge, expel, or otherwise discriminate against any person because the

3 person has opposed any practices forbidden under this part or because the person has filed a

4 complaint, testified, or assisted in any proceeding under this part." Ca. GOVT. CODE §12940(h).

5 Accordingly, to establish a *prima facie* case of retaliation, Plaintiff must show that: (1) she

6 engaged in a protected activity; (2) she was thereafter subject to an adverse employment action

7 by the employer; and (3) there is causal link between the protected activity and the employer's

8 action. *Yanowitz v. L'Oreal USA, Inc.* 36 Cal.4th 1028, 1044 (2005).

9            1.     **No Causal Link Between Protected Activity And Disapproval of**
                  **Plaintiff's Application**

10
       The employer's knowledge that the employee had engaged in a protected activity is

11 essential to the required causal link. *Morgan v. Regents of Univ. of Calif.,* 88 Cal.App.4th 52, 73

12 (2000). Here, Plaintiff clearly admits she didn't complain of any alleged sexual harassment until

13 after the decision to disapprove her employment application had already been made. Under the

14 circumstances, summary adjudication is appropriate.

15     **D.**     **Plaintiff's Sexual Harassment Claim Lacks Merit**

16            1.     **No Evidence Employer Knew Or Should Have Known Of Harassment**

17        To render an employer liable for coworker hostile environment harassment, Plaintiff must

18 prove the employer *knew or should have known* of the alleged harassment and failed to take

19 prompt remedial action. Ca. Govt. Code §12940(j)(1); *Katz v. Dole,* 709 F.2d 251, 256 (4th Cir.

20 1983); *Mockler v. Multnomah County,* 140 F.3d 808, 812 (9th Cir. 1998).

21        Here, Amtrak did not have actual notice since Plaintiff admits she did not complain to

22 management until after her application for employment had been disapproved. (Plt's depo at

23 319:7-320:13; 321:1-323:4.) Plaintiff also admits that while she previously attempted to

24 complain to Sturken and Herndon, she never made verbal contact with either of them and

25 informed them of any alleged sexual harassment. (Plt's depo at 171:7-174:19.) Plaintiff makes

26 this same admission in her DFEH charge and EEOC in-take questionnaire. (Exh. A to Munoz

27 Decl. and Exh. C to Nguyen Decl.)

28                                                                .14

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

Additionally, "[a]n employer is 'unlikely to know or have reason to know of casual, isolated, and infrequent slurs; it is only when they are so egregious, numerous, and concentrated as to add up to a campaign of harassment that the employer will be culpable for failure to discover what is going on and to take remedial steps." *Baker v. Weyerhauser Co., 903 F.2d 1342, 1346 (10th Cir. 1990); see Huston v. Proctor & Gamble Paper Products Corp, 568 F.3d 100, 105, fn. 4 (3rd Cir. 2009)* —if harassment is "so pervasive and open that a reasonable employer would have had to be aware of it." Here, the alleged sexual harassment comprises three statements by Hubbard that he wanted to have intimacy with Plaintiff and one isolated instance of an alleged touching, all over a three-month time period. (Plt's depo at 207:24-208:6; 231:4-232:25; 238:1-239:4; 243:3-244:25; 274:12-14.) There were no witnesses to these alleged events, and Plaintiff never complained to management prior to her application being disapproved. (Plt's depo at 171:7-174:19; 203:11-16; 231:4-233:11; 238:1-7; 274:12-13; 319:7-320:13; 321:1-323:3; Exh. A to Munoz Decl. and Exh. C to Nguyen Decl..) These circumstances are inapposite to the cases where the courts have imputed knowledge to the employer and do not rise to the level of being severe and pervasive. *Id.*

**2.    The Avoidable Consequences Doctrine Provides A Complete Defense**

Plaintiff may attempt to argue however, that Amtrak is strictly liable under the FEHA by claiming Hubbard was a supervisor.[4] But even if Plaintiff was able to establish in the first instance that (i) any sexual harassment took place and (ii) that Hubbard was a supervisor[5], the

---

[4] The FEHA makes the employer *strictly liable* for hostile environment harassment by a supervisor. Ca Gov. Code §12940(j)(1). Even so, *plaintiff's* own conduct may bar recovery entirely on a FEHA claim for hostile environment sexual harassment by a supervisor. *State Dept. of Health Services v. Sup.Ct. (McGinnis),* 31 Cal.4th 1026, 1043 (2003).

[5] Plaintiff admits that the only management/supervisors on the trains were the trainmasters; here, Al Sturken and Charles Herndon. (Plt's depo at 168:22-169:7; 123:5-124:1.) She acknowledges Hubbard, a conductor, did not have the authority to fire or suspend her. (Plt's depo at 169:13-170:1.); *See* Ca. Govt. Code §12940(j) (A supervisor is "any individual having the authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or the responsibility to direct them, or to adjust their grievances, or effectively to recommend that action, if, in connection with the foregoing, the exercise of that authority is not of a merely routine or clerical nature, but requires the use of independent judgment."); *see also Huston v. Procter & Gamble Paper Products Corp., 568 F.3d 100, 108 (3rd Cir. 2009)* ("[M]ere supervisory authority over the performance of work assignments by other co-workers is not, by itself, sufficient to qualify an employee for management level status.")

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-1866 CW)

15

California Supreme Court has held that the avoidable consequences doctrine bars a claim for

sexual harassment under the FEHA where plaintiff could have avoided the claimed damages with

reasonable effort and without undue risk, expense or humiliation. Ca. Govt. Code §12940(j)(1);

*State Department of Health Services v. Superior Court*, 31 Cal.4th 1026, 1043-1044 (2003). The

purpose of the avoidable consequences defense is to encourage employees to promptly resort to

employer-provided remedies and thereby stop workplace harassment before it becomes severe or

pervasive. *Id.* at 1047.

To establish the avoidable consequences defense, an employer must plead and prove:

> (1)     The employer took reasonable steps to prevent and correct work place sexual harassment;
>
> (2)     The employee unreasonably failed to use the preventative and corrective measures that the employer provided; and
>
> (3)     Reasonable use of the employer's procedures would have prevented at least some of the harm that the employee suffered.

*Id.* at p. 1044.

Plaintiff acknowledges that she received Amtrak's "Standards of Excellence" booklet

which sets forth Amtrak's anti-harassment and anti-discrimination policies. (Exhs. A and B to

Venturelli Decl.) She also admits she was told that if she ever had a problem with an employee,

she could complain to management, human resources, call Amtrak's hotline and/or the union.

(Plt's depo at 166:6-168:3.) Despite being aware of Amtrak's policies and procedures, Plaintiff

admits she never utilized any of these avenues of complaint prior to being informed that her

application for employment had been disapproved. (Plt's depo at 171:7-174:19; 319:7-320:13;

321:1-323:3; Exh. A to Munoz Decl. and Exh. C to Nguyen Decl.) She never took authorized

action to prevent the alleged conduct from becoming severe or pervasive.

Indeed, if Plaintiff had complained after the first time Hubbard allegedly told her he

wanted to have intimacy with her, she could have avoided any subsequent alleged conduct and/or

harm. Here, Plaintiff didn't complain until after she was no longer working for Amtrak.

### 3.     Plaintiff Was Not Subjected To A Hostile Work Environment

To prevail on a claim for hostile environment sexual harassment, Plaintiff must prove that

16

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1   she was subjected to harassment that was "sufficiently severe or pervasive to alter the conditions

2   of [her] employment." *Etter v. Veriflow Corp.*, 67 Cal.App.4th 457, 465 (1998). In other words,

3   plaintiff must show that the "workplace was permeated with discriminatory intimidation. . . . that

4   was sufficiently severe or pervasive to alter the conditions of her employment and create an

5   abusive working environment." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

6   To rise to the level of "sufficiently pervasive" harassment, "acts of harassment cannot be

7   occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of

8   harassment of a repeated, routine or a generalized nature." *Fisher v. San Pedro Peninsula*

9   *Hospital*, 214 Cal.App.3d 590, 610 (1989).

10   California courts consider the following factors in determining whether conduct rises to

11   the level of harassment:

12       (1) the nature of the unwelcome sexual acts or words (generally, physical
13       touching is more offensive than unwelcome verbal abuse);

    (2) the frequency of the offensive encounters;
14

15       (3) the total number of days over which all of the offensive conduct
    occurs; and

16       (4) the context in which the sexually harassing conduct occurred.

17   *Id.* at 610.

18   These factors are examined from both a subjective and an objective view point in light of

19   the "totality of the circumstances." *Id.* at 609. While an employee need not prove a "tangible job

20   detriment," "'the absence of such detriment requires a commensurately higher showing that the

21   sexually harassing conduct was pervasive and destructive of the working environment.'" *Id.* at

22   610, quoting *Jones v. Flagship Intern.*, 793 F.2d 714, 720 (5th Cir. 1986).

23   Plaintiff's claim of sexual harassment rests upon three comments by Hubbard that he

24   wanted to have intimacy with her and one alleged touching. (Plt's depo at 207:13-208:3; 231:4-

25   7; 237:20-238:2; 243:8-244:7; 274:12-14.) Amtrak's attendance records, which Plaintiff admits

26   accurately indicate the days she worked with Hubbard, reflect that she worked with Hubbard only

27   two times – April 16 and 19 – during the entire time she worked in Amtrak's San Francisco

28   location. (Plt's depo at 127:20-129:7; Exhs. F and G to Sturken Decl.; Hubbard Decl. ¶¶ 4 and

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

17

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

5.) On these days, they worked together for a period of approximately 5 hours on the roundtrip trains departing from San Francisco to San Jose. (*Id.*) Plaintiff testified that their conversation took place in the context of discussing work rules and exchanging personal information about each other. (Plt's depo at 208:22-209:21.) The entirety of the conversation comprises words to the effect of Hubbard stating he wanted to have intimacy with her, her responding, "Don't say that to me" to which Hubbard replied "Okay." (Plt's depo at 207:13-208:3; 218:1-12; 231:4-7; 234:7-235:16; 238:1-242:1.) Additionally, the alleged touching incident was one brief, single isolated incident that took place when Plaintiff was bent over adjusting the train brakes. (Plt's depo at 246:9-251:9.) Plaintiff testified that she jumped up after she allegedly felt Hubbard's hands and that he immediately apologized. (Plt's depo at 250:20-251:9.)

The totality of the alleged sexual harassment of three comments and one touching, assuming they were true, while inappropriate, are not severe or pervasive enough to alter the terms and conditions of Plaintiff's employment and create an abusive working environment. See *Anderson v. Family Dollar Stores of Arkansas, Inc.* 579 F.3d 858, 862 (8th Cir. 2009) (supervisor rubbing employee's shoulders on several occasions, calling her "baby doll," and one telephone call suggesting sexual relations, insinuating he could advance her career, were *not* sufficiently severe or pervasive to alter the terms and conditions of her employment); *Corbitt v. Home Depot U.S.A., Inc.*, 573 F.3d 1223, 1241 (11th Cir. 2009) (five offensive touchings of a male employee by a male supervisor over an 8-month period, plus frequent sexual comments, have been held *not* sufficiently severe or pervasive for a hostile environment harassment claim); *Jones v. Flagship Intern.*, 793 F.2d 714 (5th Cir. 1986) (supervisor's two suggestive remarks and a single proposition of plaintiff were isolated instances of sexual harassment not tantamount to hostile work environment); *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 615 (6th Cir. 1986) (Even though coworker was extremely vulgar and crude and in confrontation posture with plaintiff and nude photos were present, totality of the workplace was not affected.); *Downes v. F.A.A.*, 775 F.2d 288, 293 (D.C. Cir. 1985) (Defendant engaged in mildly offensive verbal conduct on three occasions and twice touched plaintiff's hair.).

Additionally, Plaintiff cannot point to any job detriment resulting from the alleged

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-1866 CW)

18

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1   sexual harassment. Her performance record reflects that she arrived to work late multiple times,

2   missed or delayed calling out train track restrictions, missed removing a train tag, and missed

3   calls to come to work, on days where she did not work with Hubbard. (Depo Exh. 3.)

4       **E.    Failure To Prevent Harassment And Discrimination Under The FEHA**

5       Government Code §12940(k) provides that it is unlawful for any employer to fail to take

6   all reasonable steps necessary to prevent harassment and discrimination from occurring. CA.

7   GOVT. CODE §12940(k). However, a claim for alleged failure to prevent harassment and

8   discrimination from occurring under the FEHA cannot lie in the absence of a finding of actual

9   discrimination or harassment. *Trujillo v. North County Transit Dist.*, 63 Cal.App.4th 280, 288-

10   289 (1998). As discussed above, since Plaintiff cannot establish her claims of sexual harassment

11   and/or discrimination under the FEHA, her claim for violation of Government Code §12940(k)

12   likewise should be summarily dismissed.

13       **F.    Unlawful Discharge In Violation Of Public Policy**

14       The validity of Plaintiff's causes of action for wrongful discharge in violation of public

15   policy is dependent upon having viable causes of action for discrimination and/or sexual

16   harassment. *Soules v. Cadam, Inc*, 2 Cal.App.4th 390, 403-404 (1992). As Plaintiff's claims for

17   discrimination and sexual harassment will fail, her cause of action based on the same underlying

18   facts will fail as well.

19       **G.    Plaintiff's Breach Of Covenant Of Good Faith And Fair Dealing Claim Fails**

20       Plaintiff cannot present any evidence of an oral, written and/or implied contract of

21   employment. Plaintiff admits in her discovery responses that "Amtrak hired [her] on a

22   probationary basis." (Exh. G to Nguyen Decl.) The evidence is uncontroverted that Plaintiff was

23   hired at the Oakland location for a probationary period but did not pass probation. (Plt's depo at

24   66:3-12; 67:20-69:2; 284:3-24; Exh. A to Duffin Decl.) Plaintiff admits she was then hired in the

25   San Francisco location where she restarted her probationary period but was told at the end of the

26   probationary period that she did not pass probation. (*Id.*) Plaintiff acknowledges that passing

27   probation was a prerequisite to being offered permanent employment with the attendant union

28   membership and benefits. (*Id.*) Accordingly, since no oral, written and/or implied contract of

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

19

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1    employment exists, Plaintiff's breach of covenant of good faith and fair dealing claim fails as a

2    matter of law. *Smith v. City & County of San Francisco*, 225 Cal.App.3d 38, 49 (1990) ("The

3    prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the

4    existence of a contractual relationship between the parties, since the covenant is an implied term

5    in the contract.").

6           Moreover, to the extent Plaintiff claims she had passed probation and was entitled to

7    union membership, her breach of implied covenant of good faith and fair dealing claim would be

8    preempted by the collective bargaining agreement entered into between Amtrak and the union.

9    Such agreement would provide the exclusive remedy for any breach of contract related claims.

10   *Kuhn v. Department of Gen. Services*, 22 Cal.App.4th 1627, 1637 (1994) (The obligation of the

11   implied covenant is measured by the provisions of the particular agreement at issue.)

12   **H.     The Federal Employers' Liability Act ("FELA") Preempts Plaintiff's Causes
             of Action for Negligent and Intentional Infliction Of Emotional Distress,**
13   **       Negligent Hiring, Training And Supervision and Assault and Battery**

14          The Federal Employers' Liability Act ("FELA") (45 U.S.C. §51 et seq.) establishes a

15   comprehensive mechanism for compensating railroad employees for injuries resulting from the

16   "negligence of any of the officers, agents, or employees" of the carrier.  FELA has uniformly

17   been found to constitute the *exclusive remedy* for such injures. *Nordgren v. Burlington Northern*

18   *R.R. Co.*, 101 F.3d 1246 (8th Cir. 1996) ("It is clear that Congress manifestly intended to occupy

19   the field of recovery for personal injuries to railroad employees incurred in the course of

20   employment when it enacted FELA."); *Monarch v. Southern Pac. Transp. Co.*, 70 Cal.App.4th

21   1197, 1209 (1999) ("The exclusive remedy provided by FELA preempts state law in actions by

22   railroad employees predicated upon the *negligence* of their employers is well settled.") (citations

23   omitted).   The United States Supreme Court has also held that "claims for damages for negligent

24   infliction of emotional distress are cognizable under FELA." *Consolidated Rail Corporation v.*

25   *Gottshall*, 512 U.S. 532, 550, 114 S.C.T. 2396, 2407, 129 L.Ed.2d. 427 (1994).  An action for

26   intentional infliction of emotional distress has also been held preempted by the FELA. *Abate v.*

27   *Southern Pacific Transp. Co.*, 993 F.2d 107, 112 (5th Cir. 1993).  The FELA also recognizes

28   assault, battery and emotional distress claims brought directly against an individual railroad

20

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

employee. *Bloom v. Consolidated Rail Corp.*, 812 F.Supp. 553, 557(1993), rev'd on other grounds, 41 F.3d 911 (1994) (Engineer's claim that he was assaulted by railroad patrolman and that patrolman's actions caused in part his emotional injuries stated actionable claim against patrolman under FELA.); *Ochsrider v. Reading Co.*, 172 F.Supp.830, 832 (E.D.Pa. 1959) (negligence under the FELA embraces both an assault and battery).

Consequently, Plaintiff's claims (i) against Amtrak and Hubbard for negligent and intentional infliction of emotional distress, (ii) against Amtrak for negligent supervision, hiring and training and (iii) against Hubbard for assault and battery, are preempted by FELA and should be dismissed as a matter of law.

I.    **Alternatively, Plaintiff Will Be Unable To Establish Viable Direct Causes Of Against Hubbard For Negligent and Intentional Infliction of Emotional Distress and Assault And Battery**

1.    **Infliction of Emotional Distress**

To establish a cause of action for intentional infliction of emotional distress, Plaintiff must establish (1) extreme and outrageous conduct by Defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress. See *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009) (not an employment case); *Alcorn v. Anbro Eng., Inc.*, 2 Cal.3d 493, 497-499 fn. 5 (1970); CACI 1600; and Rest.2d Torts §46(1).

To recover for intentional infliction of emotional distress, the action must be shown to be "so extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Alcorn v. Anbro Eng., Inc.*, supra, 2 Cal.3d at 499, fn. 5 (internal quotes omitted)--"vituperative language or vindictive conduct" must be shown.

Plaintiff will be unable to show that the one isolated incident of an alleged touching by Hubbard is extreme and outrageous conduct so as to exceed the bounds of decency, is atrocious and utterly intolerable in a civilized community. See also *Haberman v. Cengage Learning*, 180 Cal.App.4th 365, 389 (2009) (allegations insufficient to show hostile environment sexual harassment failed to establish intentional infliction of emotional distress). Nor can Plaintiff

21

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1  demonstrate that by this alleged touching Hubbard intended to cause her emotional distress or

2  had a reckless disregard of the probability of causing her emotional distress. At minimum, she

3  testifies she did not see Hubbard approach her, she never saw Hubbard touch her and that

4  Hubbard immediately apologized when she jumped up after the alleged touching. (Plt's depo at

5  244:23-25; 246:15-18; 247:14-25; 250:20-251:9.) Additionally, Hubbard denies having touched

6  Plaintiff in any improper manner. (Hubbard Decl. at ¶8.)

7  　　　　To establish a claim for negligent infliction of emotional distress, Plaintiff must establish

8  that (1) Defendant engaged in *negligent conduct;* (2) Plaintiff suffered *"serious"* emotional

9  distress; and (3) that Defendant's negligent conduct was a substantial factor in causing the

10  emotional distress suffered by plaintiff.  See <u>CACI 1620</u>; <u>BAJI 2.80</u>; <u>*Burgess v. Sup. Ct. (Gupta)*</u>

11  <u>(1992) 2 Cal.4th 1064, 1072, 9 CR2d 615, 618</u> (not an employment case).  Plaintiff will be

12  unable to establish Hubbard negligently touched her because she testifies she did not see Hubbard

13  approach her nor did she see him before he touched her. (Plt's depo at 244:23-25; 247:20-25.)

14  Additionally, Hubbard denies having touched Plaintiff in any improper manner. (Hubbard Decl.

15  at Hubbard Decl. at ¶8.)

16  　　　　**2.**　　　　**Assault and Battery**

17  　　　　An assault is an act committed by defendant with the intent to cause apprehension of an

18  immediate injury coupled with a reasonable apprehension of an immediate touching.  See <u>*Thing*</u>

19  <u>*v. La Chusa,* 48 Cal.3d 644, 649 (1989)</u>; <u>*Lowry v. Standard Oil Co. of Calif.,* 63 Cal.App.2d 1, 6-</u>

20  <u>7 (1944)</u>; see also <u>CACI 1301</u>.  Plaintiff testified she was bent over adjusting the train brakes

21  when Hubbard approached her from behind and touched her on her butt. (Plt's depo at 246:15-

22  248:19.)  She testified she jumped up immediately when she felt him touched her and that he

23  immediately apologized. (Plt's depo at 250:20-251:9.)  She testified that she did not see him

24  approach her nor that she saw him before she was allegedly touched. (Plt's depo at 244:23-25,

25  247:20-25.)  Accordingly, Plaintiff could not have had a reasonable apprehension of an

26  immediate touching if she didn't see Hubbard approach her or touch her prior to the alleged

27  touching.  Similarly, because she did not see Hubbard touch her, she cannot demonstrate that

28  Hubbard had the intent to cause her reasonable apprehension.  Moreover, Hubbard denies

22

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

1   having touched Plaintiff in any improper manner.  (Hubbard Decl. at ¶8.)

2         A battery requires a showing that defendant touched plaintiff's person with the intent to

3   harm or offend plaintiff; plaintiff did not consent to be touched; and plaintiff was harmed or

4   offended by defendant's conduct. CACI 1300; *see also* BAJI 7.50; *Fluharty v. Fluharty*, 59

5   Cal.App.4th 484, 497 (1997).  The intent necessary to constitute battery is not an intent to cause

6   harm, but an intent to do the act that causes the harm.  See *Barouh v. Haberman*, 26 Cal.App.4th

7   40, 44 (1994).  Similarly, here Plaintiff cannot demonstrate that Hubbard touched her with an

8   intent to harm her because (1) she testified that she did not see Hubbard touch her and a fortiori

9   cannot establish that he intended to harm her; and (2) Hubbard denies having touched Plaintiff in

10  any improper manner.  (Plt's depo at 244:23-25; Hubbard Decl. at ¶8.)

11        Accordingly, Plaintiff will be unable to establish her claims for negligent and intentional

12  infliction of emotional distress and assault and battery against Hubbard.

13        **J.    Plaintiff's Claim For Punitive Damages Against Hubbard Fails**

14        As Plaintiff's claims for assault and battery and intentional infliction of emotional

15  distress against Hubbard fail because (1) they are preempted under FELA and/or (2) Plaintiff will

16  be unable to prove the required elements, Plaintiff's claim for punitive damages against Hubbard

17  arising out of these causes of action will also fail.

18                        **VII.    CONCLUSION**

19        Based on the foregoing reasons, Defendants Amtrak and Hubbard respectfully request

20  that the Court grant their motion for summary judgment, or alternatively, partial summary

21  judgment of claims, regarding the complaint filed by Plaintiff Diane McKinzy.

22  Dated: June 23, 2011                    LAFAYETTE & KUMAGAI LLP

23

24                                          */s/ Duyen T. Nguyen*
                                            DUYEN T. NGUYEN
25                                          Attorneys for Defendants National Railroad
                                            Passenger Corporation aka Amtrak and
26                                          Wilfred Hubbard

27

28                                                                                          23

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-
1866 CW)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1

### CERTIFICATE OF SERVICE

2

    I certify that a copy of this document was served electronically on June 23, 2011, on counsel of record in compliance with Federal Rule 5, Local Rule 5.6 and General Order 45, by use of the Court's ECF system.

3

4                                          _/s/ Duyen T. Nguyen_____
                                           DUYEN T. NGUYEN

5

6

7

8

9

10

11

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
FAX (415) 357-4605
(415) 357-4600

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-1866 CW)

**PROOF OF SERVICE**

I declare:

I am employed in the City and County of San Francisco, California. I am over the age of eighteen years and not a party to the within action. My business address is 100 Spear Street, Suite 600, San Francisco, California 94105.

On June 23, 2011, I caused to be delivered the following documents named below on the parties in this action as follows:

**DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

_____ (BY MAIL) I caused each and such envelope, with postage thereon fully prepaid, to be placed in the United States mail at San Francisco, California. I am readily familiar with the practice for the collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.

**X** (BY PERSONAL SERVICE) I caused to be personally served each document listed above on the addressee(s) noted below.

_____ (BY FACSIMILE) I caused to be sent via facsimile at the facsimile number listed below, a copy of each document to the addressee(s) noted below

_____ (BY OVERNIGHT MAIL) I caused to be delivered to an overnight courier service each such envelope to the addressee(s) noted below.

Diane McKinzy, In Per Se
1304 Crestfield Drive
San Ramon, California 94583

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on ___June 23, 2011___, at San Francisco, California.

Cameron Galloway

Defendants' Notice of Motion and Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Case No. C10-1866 CW)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605