IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE McKINZY,<br><br>        Plaintiff,<br><br>    v.<br><br>NATIONAL RAILROAD PASSENGER<br>CORPORATION, also known as<br>AMTRAK; WILFRED HUBBARD; DOES I<br>through X, inclusive,<br><br>        Defendants.<br>_____/ | No. C 10-1866 CW<br><br>ORDER GRANTING IN<br>PART AND DENYING IN<br>PART DEFENDANTS'<br>MOTIONS FOR SUMMARY<br>JUDGMENT (Docket No.<br>48); DENYING<br>PLAINTIFF'S MOTION TO<br>CONTINUE DISCOVERY<br>(Docket No. 56); AND<br>DENYING DEFENDANTS'<br>MOTION TO MODIFY THE<br>COURT'S PRETRIAL<br>SCHEDULING ORDER<br>(Docket No. 81) |

Defendants National Railroad Passenger Corporation (Amtrak) and Wilfred Hubbard seek summary judgment or, in the alternative, partial summary judgment in their favor on all claims filed by pro se Plaintiff Diane McKinzy. Docket No. 48. McKinzy has opposed the motion. In addition, McKinzy moves to extend the discovery cutoff. Docket No. 56. Having considered all of the parties' submissions and oral argument, the Court grants Defendants' motion in part and denies it in part.[1]

BACKGROUND

On October 1, 2007, McKinzy began work as Assistant Passenger Conductor for Amtrak, based in Oakland, California. Amended

_____

[1] To the extent that the Court relied upon evidence to which Defendants object, those objections are overruled. To the extent the Court did not rely on evidence to which the parties objected, the objections are overruled as moot.

United States District Court
For the Northern District of California

Declaration of Diane McKinzy, Exh. A.  Pursuant to a collective bargaining agreement, the first ninety to 120 days of her employment, including training, were considered probationary.  Id. McKinzy's new hire training was supervised by Rick Peseau, a Senior Officer at Amtrak's Employee Development Department at the Oakland station.  Declaration of Rick Peseau in support of Defendants' Supplemental Brief at ¶ 2-3.

In January 2008, McKinzy was transferred to the San Francisco station where she was required to restart her probationary period. McKinzy claims that the decision to transfer her and require her to restart her probationary status was discriminatory based on sex.  In support of this claim, McKinzy attested that she was the only female in a training class that was transferred from Oakland to San Francisco, due to lack of work.  McKinzy Amended Dec. at 2:22-24.  At the time McKinzy was transferred, two male assistant conductors from Oakland were also transferred for retraining in San Francisco and were required to restart their probationary period.  Peseau Dec. at ¶ 6.

Peseau attested that McKinzy was "let go" from Oakland "principally" because Amtrak experienced a reduction in its workforce due to inclement weather that led to cancellation of certain train service.  Id. at ¶ 7.  However, Peseau also stated that her performance in Oakland was poor; she was late to class in

United States District Court
For the Northern District of California

some instances, failed to bring her equipment and did not complete her homework.[2]  Id.

In response to McKinzy's charge of discrimination, which she later submitted to the Equal Employment Opportunity Commission, Amtrak stated that "there was not enough work and too many persons on the Oakland Crew Base to allow [McKinzy] to complete her probation hours."  McKinzy Amended Dec., Ex. B.  The letter does not mention any poor performance by McKinzy.  Amtrak stated that on January 8, 2008, McKinzy was offered and accepted a move to the CalTrain Crew Base in San Francisco, with the proviso that she would restart her probationary period.[3]  According to Amtrak, McKinzy was required to receive classroom training and would work for a ninety to 120 day probationary period thereafter.

On January 31, 2008, McKinzy worked her last day in Oakland, and, on February 5, 2008, she transferred to San Francisco. McKinzy Amended Dec., Ex. B.  McKinzy was assigned to Amtrak's Caltrain line that ran between San Francisco and San Jose.  As noted earlier, Sturken supervised McKinzy and Hubbard.  According

[2] Alan Sturken, the trainmaster in charge of the trains on which McKinzy and Hubbard later worked, attested to the same facts regarding McKinzy's performance in Oakland. However, the Court disregards his statements because they lack foundation.

[3] Amtrak's response states that McKinzy accepted the offer to join CalTrain on January 8, 2009, but because McKinzy did not work for Amtrak during 2009, it appears that 2008 is the correct date.

3

**United States District Court**
For the Northern District of California

to Sturken, McKinzy began work as a probationary assistant conductor in San Francisco on March 10, 2008.

McKinzy became a member of the United Transportation Union on March 21, 2008, McKinzy Decl., Ex. H.  According to the letter offering her employment with Amtrak, McKinzy was required to join the union within sixty calendar days after she first performed compensated service in her position.  Amended McKinzy Decl., Ex. A.  However, Amtrak's response to McKinzy's EEOC complaint stated that if she completed her probationary period--a period of ninety to 120 actual work days--in San Francisco, following her transfer from Oakland, then she would be required to join the union. McKinzy Amended Dec., Ex. B.

McKinzy claims that Hubbard, while working as the conductor, sexually harassed her on several occasions when they worked together on the Caltrain line.  McKinzy contends that most of the harassment occurred during trips on "baseball trains," referring to trips bringing passengers to and from San Francisco for Giants games at AT&T park.

When asked about the first incident of harassment by Hubbard, McKinzy stated that she and Hubbard had been talking.  No one was present at the time.  During the discussion, which may have involved rules for boarding the train, Hubbard said, "[Y]ou know,

**United States District Court**
For the Northern District of California

1    perhaps you might consider being intimate with me."   McKinzy Dep.[4]

2    at 207:13-14.   She responded, "Don't say that to me."   Id. at

3    218:1-4.   Hubbard said, "Okay" and did not speak to her for the

4    rest of the day.   Id. at 218:8-12.

5        The second incident, as McKinzy describes it, occurred during

6    a trip on a "baseball train."   Id. at 232:3-5.   The train was at a

7    stop, prior to boarding time, and McKinzy had a break.   Id. at

8    233:1-9.   While standing near the doors to the first cab, Hubbard

9    approached her and asked her to have sex.   Id. at 234:8-15.

10   McKinzy declined and told him politely to stop propositioning her.

11   Id. at 234:19-24.   When Hubbard did not respond, McKinzy walked

12   away and proceeded with her job duties.   Id. at 235:10-19, 237:11-

13   17.   McKinzy felt very uncomfortable.   Id. at 234:19-21.

14       McKinzy testified that the next incident also occurred on a

15   train.   Hubbard reportedly told McKinzy, "You know, I'd like to

16   have sex with you.   I don't pay for pussy, you know.   I don't pay

17   for sex.   What do you think about it?"   Id. at 240:18-23.   Hubbard

18   "kept asking [McKinzy] to have sex with him."   Id. at 239:1-2.

19   The conversation went on for about two to four minutes.   Id. at

20   240:2-14.   McKinzy asked Hubbard to stop talking to her in that

21   manner, but he responded, "Well, just think about it."   Id. at 21-

22   22.   McKinzy felt that Hubbard was not taking her seriously.   Id.

26       [4] All excerpts from McKinzy's deposition cited in this
     order were included as Exhibit A to Duyen T. Nguyen's
27   Declaration in Support of Defendants' Motion for Summary
     Judgment.

at 241:18.  In deposition, McKinzy was asked why Hubbard would have shown such persistence.  Her response indicates that she felt pressure because Hubbard was monitoring her job performance and she was a probationary employee.  Id. at 239:6-11.

McKinzy described a subsequent incident that occurred while she was working in San Francisco.  At the time, she was "clonking the brakes."  Clonking entails bending over to tighten the train brakes to prevent it from rolling.  Id. at 243:15-25.  The task required McKinzy to pull up and down on the adjuster attached to the brake, the resistance increasing with each pull.  Id. at 243:17-22, 246:22-247:11, 248:4-17.  As McKinzy faced the train, trying to keep it from moving, bent over in a near squat, clonking the brakes, Hubbard approached her from behind and touched her buttocks close to her "private area."  Id. at 244:1-15, 248:14-19. McKinzy testified, "I was clonking the brakes and he came up behind me and touched me on my butt.  But the way I was bent over it was a little--he got a little closer to my private area as well as my butt because the way I had to bend over to clonk the brakes."  Id. at 244:1-5.  She yelled.  Id. at 248:22.  She jumped up and said, "What are you doing."  Id. at 248:25-249:5.  She asked Hubbard, "Why did you touch my butt?  Why did you do that? Why are you touching me?"  Id. at 251:12-13.  Hubbard responded, "I don't know.  I just felt like it."  Id. at 251:14-15.  Hubbard apologized.  Id. at 251:2-19.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McKinzy also testified as to what was apparently a fifth incident of harassment, which occurred on a day when a train had derailed.  Again, Hubbard broached the topic of whether McKinzy would have sex with him.  Id. at 273:7-274:14.

Hubbard denies having ever harassed McKinzy or attempting to pursue anything other than a working relationship with her.

Sturken testified that he reviewed Amtrak's records and found two occasions when Hubbard and McKinzy worked together.  On April 16, 2008 both worked on train number sixty-six, departing at 4:27 pm from San Francisco to San Jose, and on train number eighty-nine, departing at 6:50 pm from San Jose to San Francisco.  On April 19, 2008 both worked together again on train number forty-six departing San Francisco to San Jose at 8:00 pm, and on train number fifty-one departing at 10:30 pm from San Jose to San Francisco.  McKinzy insists that she worked with Hubbard more than twice and continues to seek records to this effect.

Amtrak has an anti-harassment and discrimination policy, memorialized in its employee handbook, "Amtrak Standards of Excellence."  McKinzy acknowledged that she received the handbook on September 24, 2007.  Id., Ex. B.  The policy states Amtrak's commitment to managing the company and administering programs free from sex discrimination and in conformance with all applicable federal, state and local laws.  Declaration of Susan Venturelli, Ex. A.  McKinzy testified that in training she was informed that she could submit complaints to management, the human resources

department or hot-line telephone number. McKinzy Dep. at 167:24-168:3.

In her deposition, McKinzy testified that conductors, including Hubbard, supervised her work, although she conceded that they could not fire or suspend her. McKinzy Dep. at 169:13-15, 169:24-25; 179:2-4. According to McKinzy, a conductor could give a report about an assistant conductor that could lead to his or her termination. Id. at 169:14-18. McKinzy faulted Hubbard's declaration for failing to disclose his duties giving orders to assistant conductors and providing a report as part of the assistant conductor's performance evaluation. In his declaration, Hubbard does not deny that he was McKinzy's supervisor.

McKinzy testified that she called Sturken twice, leaving two voice mail messages. When asked to relay what she said "verbatim" in the messages, McKinzy responded that in the first message she asked Sturken to call her back, stating, "It's very important. I feel very uncomfortable about a situation and I need you to call me back." Id. at 174:3-9. The second time she called, McKinzy repeated, "It's very important. I need you to call me back." Id. at 174:10-11. According to McKinzy, Sturken never called back. Sturken disputes that McKinzy ever left a voice message on his phone asking him to call her back. Sturken Dec. at ¶ 12. McKinzy conceded that she "never completely made a complaint to Al Sturken." McKinzy Dep. at 171:23-25. McKinzy testified that she never saw Sturken on any of her trains. Id. at 316:11-12.

United States District Court
For the Northern District of California

McKinzy testified that she called Charles Herndon twice and left similar messages.  McKinzy Dep. at 174:13-16.  Her testimony does not disclose whether she received a call back.  Herndon attests that he never received a voice message from her asking him to call her back.  Declaration of Charles Herndon at ¶ 8.  McKinzy has provided no indication of when she made the phone calls to Sturken and Herndon.

In addition to the harassment by Hubbard, McKinzy testified that an individual named Schraeder made disparaging comments to her based on her being a woman.  McKinzy Dep. at 274:21-23.  McKinzy does not provide Schraeder's first name or point to any evidence detailing the nature of his comments.  Schraeder's comments do not appear to be related to McKinzy's harassment or discrimination claim.

On May 21, 2008, McKinzy received a "Letter of Counseling" reminding her of her obligation to report to work on time.  At that point, McKinzy had arrived late to work on five occasions. The counseling letter provided language in the General Code of Operating Rules and Amtrak's Standard of Excellence addressing attendance.  Sturken Dec., Exh. E.  On May 29, 2008, McKinzy arrived twenty-nine minutes late.

On June 6, 2008, McKinzy met with Herndon, Sturken and another man whose name she could not recall, although he may have been Mark Collins.  McKinzy was informed that she was terminated and received a letter stating that her application for employment

United States District Court
For the Northern District of California

as an assistant conductor with Amtrak was "disapproved."  During

the meeting, McKinzy asked why Sturken and Herndon had failed to

call her back and informed the men directly, for the first time,

that she had been experiencing harassment.  That day McKinzy also

met in person with Sheila,[5] an Amtrak Human Resources officer, and

told her that Hubbard had been harassing her.  Id. at 319:19-

320:13.

On December 17, 2008, McKinzy submitted to the EEOC and the

Department of Fair Employment and Housing a charge of

discrimination.  In her charge against Amtrak, McKinzy stated the

following:

> My most recent position was Assistant Conductor.  From
> March through May 2008, I was sexually harassed by
> Wilford Hubbart Conductor.  I worked with Mr. Hubbart
> 5 or six times and each time, he stated that he wanted
> to f*ck me.  He also touched my buttock while we were
> working.  I called the Train Masters, Al Sterkin and
> Charles Herndon, to report the sexual harassment, but
> my calls were never returned.  On June 6, 2008, I was
> terminated.
>
> Respondent stated that I was terminated because I did
> not pass my probation.
>
> I believe I was discriminated against because of my
> sex (female) and retaliated against for engaging in
> protected activity, in violation of Title VII of the
> Civil Rights Act of 1964, as amended.

On November 30, 2011, based on its investigation, the EEOC

was unable to conclude that the information obtained establishes

---

[5] McKinzy does not indicate Sheila's last name.

statutory violations under Title VII.  Declaration of Elias Munoz, Ex. C.

McKinzy has brought suit against Amtrak for (1) sex discrimination in violation of the California Fair Employment and Housing Act (FEHA); (2) sexual harassment in violation of the FEHA; (3) wrongful termination; (4) breach of the covenant of good faith and fair dealing; (5) negligent infliction of emotional distress; (6) intentional infliction of emotional distress; and (7) negligent hiring, training and supervision.  In addition, McKinzy has sued Hubbard, as an individual, for (1) negligent infliction of emotional distress; (2) intentional infliction of emotional distress; (3) assault, (4) battery; and (5) punitive damages.

DISCUSSION

I. Claims Against Amtrak

A. Sex Discrimination

Defendants contend that McKinzy has insufficient evidence to support her claim for sex discrimination.  As noted previously, McKinzy asserts that the decision to transfer her from Oakland to San Francisco and require her to start her probationary period amounted to sex discrimination.  McKinzy testified that Schraeder made derogatory comments about her being a woman.  However, she does not argue or point to evidence that Schraeder was involved in the adverse employment action.  Therefore, direct evidence of

Schraeder's bias does not support McKinzy's claim for sex discrimination.

California courts apply the framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to consider circumstantial evidence of discrimination in resolving motions for summary judgment on claims under the FEHA. Guz v. Bechtel Nat., Inc., 24 Cal. 4th 317, 354 (2000). To establish a prima facie case of discrimination under the FEHA, McKinzy must show that (1) she belongs to a protected class, (2) she was qualified for the position, (3) she was subject to an adverse employment action, and (4) similarly situated individuals who were not members of the protected class were treated more favorably. Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 658 (9th Cir. 2002).

McKinzy's claim fails under the McDonnell Douglas test because she cannot satisfy the fourth element. Undisputed evidence shows that two other male assistant conductors were transferred from Oakland to San Francisco at the same time as McKinzy and both were required to restart their probationary status.

B. Harassment

"California courts have adopted the same standard [applied under Title VII] for hostile work environment sexual harassment claims under the FEHA." Lyle v. Warner Bros. Television Prods., 38 Cal. 4th 264, 279 (2006). Accordingly, to prevail McKinzy must establish that "she was subjected to sexual advances, conduct, or

**United States District Court**
For the Northern District of California

comments that were (1) unwelcome, (2) because of sex, and (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." Id. (internal citations omitted). "In addition, she must establish the offending conduct was imputable to her employer." Id. Amtrak argues that McKinzy cannot establish sufficiently severe or pervasive harassment or harassment imputable to the company.

"With respect to the pervasiveness of harassment, courts have held an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." Id. at 283. To determine whether conduct rises to the level of actionable harassment, California courts consider "(1) the nature of the unwelcome sexual acts or words (generally, physical touching is more offensive than unwelcome verbal abuse); (2) the frequency of the offensive encounters; (3) the total number of days over which all of the offensive conduct occurs; and (4) the context in which the sexually harassing conduct occurred." Fisher v. San Pedro Peninsula Hospital, 214 Cal. App. 3d 590, 610 (1989).

Here, Hubbard's conduct, if proven, could be found to rise to the level of actionable harassment because it amounts to a pattern of escalating harassment that included persistent, explicit, unwelcome propositions to have sex. McKinzy testified that she repeatedly rejected Hubbard's invitations to have sex. Finally,

13

Hubbard touched her buttocks and nearly touched her "private area."

This case is distinguishable from the cases upon which Amtrak relies. In Anderson v. Family Dollar Stores of Arkansas, Inc., 579 F.3d 858, 862 (8th Cir. 2009), the plaintiff experienced repeated back rubs and cradling of her chin; the case did not involve sexual touching of the degree of offensiveness found in this case, nor did the alleged harasser make direct, in-person propositions for sex. In Jones v. Flagship Intern., 793 F.2d 714, 716-17 (1986), the accused harasser propositioned the plaintiff while on a business trip to Detroit and again during a business trip to San Francisco. The accused later made a sexually suggestive comment, telling the plaintiff that she was "off the hook," because a friend was interested in her. In this case, however, there is evidence that Hubbard demonstrated greater persistence and touched McKinzy offensively.

Other cases cited by Amtrak are no longer good law. The opinion in Corbitt v. Home Depot U.S.A, Inc., 573 F.3d 1223, 1241 (11th Cir. 2009), was vacated by Corbitt v. Home Depot U.S.A., Inc. (Corbitt II), 589 F.3d 1136 (11th Cir. 2009). Although Corbitt II likewise found no actionable harassment under Title VII, that opinion was also subsequently vacated. Corbitt v. Home Depot U.S.A., Inc., 611 F.3d 1379 (2010). The Supreme Court and the Ninth Circuit have expressly rejected the standard applied in Rabidue v. Osceola Refining Co., 805 F.2d 611, 615 (6th Cir.

14

1986).[6]  See, Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993)

(holding that a "discriminatorily abusive work environment, even

one that does not seriously affect employees' psychological well-

being" may be actionable.); Ellison v. Brady, 924 F.2d 872, 877

(9th Cir. 1991).

Because McKinzy concedes that she did not complain about the

harassment to Amtrak authorities until the day she was terminated,

and she does not point to any other evidence that Amtrak knew or

should have known about the misconduct, she cannot sue Amtrak for

harassment by a co-worker.  Cal. Govt. Code § 12940(j)(1)

("Harassment of an employee, an applicant, or a person providing

services pursuant to a contract by an employee, other than an

agent or supervisor, shall be unlawful if the entity, or its

agents or supervisors, knows or should have known of this conduct

and fails to take immediate and appropriate corrective action.")

However, McKinzy asserts that Hubbard was her supervisor.

"[U]nder the FEHA, an employer is strictly liable for all acts of

sexual harassment by a supervisor."  State Dept. of Health

Services v. Superior Ct. (McGinnis), 31 Cal. 4th 1026, 1042 (2003)

(emphasis in original).  Amtrak asserts that Hubbard was not a

supervisor because trainmasters, here Sturken, were in charge of

United States District Court
For the Northern District of California

---

[6] The workplace at issue in Rabidue included posters of
naked and partially dressed women and an employee who
customarily called women "whores," "cunt," "pussy," and
"tits," referred to the plaintiff as a "fat ass," and
specifically stated, "All that bitch needs is a good lay."

overseeing the trains.  This does not disprove that Hubbard was also McKinzy's supervisor.

Amtrak also argues Hubbard was not a supervisor because he was a union member, not management.  Amtrak's argument is unpersuasive because the definition of "supervisor" under the FEHA is not based upon the distinction between management and labor. The definition states,[7]

> "Supervisor" means any individual having the authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or the responsibility to direct them, or to adjust their grievances, or effectively to recommend that action, if, in connection with the foregoing, the exercise of that authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

Cal. Govt. Code § 12926(r).  McKinzy provides evidence that Hubbard had the responsibility to direct her on the job.  This dispute of fact precludes summary judgment that she was not sexually harassed by her supervisor.

Next, Amtrak argues that the avoidable consequences doctrine provides a complete defense to McKinzy's sexual harassment claim. "Under the avoidable consequences doctrine as recognized in California, a person injured by another's wrongful conduct will not be compensated for damages that the injured person could have

---

[7] Section 12926 is part of the FEHA and subdivision (r) was added in 1999 to include the definition of supervisor employed by the Agriculture Labor Relations Act.  Chapman v. Enos, 116 Cal. App. 4th 920 (2004).

United States District Court
For the Northern District of California

avoided by reasonable effort or expenditure." <u>McGinnis</u>, 31 Cal.

4th at 1043. <u>McGinnis</u> explained, in the context of a claim for

damages for hostile environment sexual harassment by a supervisor,

> An employee's failure to report harassment to the
> employer is not a defense on the merits to the
> employee's action under the FEHA, but at most it
> serves to reduce the damages recoverable. And it
> reduces those damages only if, taking account of the
> employer's anti-harassment policies and procedures and
> its past record of acting on harassment complaints,
> the employee acted unreasonably in not sooner
> reporting the harassment to the employer.

<u>Id.</u> at 1049.

Thus, the doctrine of avoidable consequences is a defense

only to damages.  Here, there is evidence that McKinzy did not

make a reasonable effort to complaint about the harassment.

McKinzy did not call Amtrak's hotline or a Human Resources

representative after she failed to receive a response to her

voicemail messages, even though she was aware of those avenues for

making a complaint.  If a jury, taking account of Amtrak's anti-

harassment policies and procedures and its past record of acting

on harassment complaints, found that McKinzy was not reasonably

diligent in reporting Hubbard's misconduct, Amtrak could be

shielded from damages.

Summary judgment in favor of Amtrak on McKinzy's sexual

harassment claim is denied, although McKinzy's damages may be

limited.

United States District Court
For the Northern District of California

17

C. Failure to Prevent Harassment and Discrimination

Included in McKinzy's first cause of action for sexual harassment and discrimination in violation of the FEHA is a claim against Amtrak for failure to prevent harassment, pursuant to California Government Code section 12940(k). Amtrak moves for summary judgment as to this claim. Amtrak contends that a claim for failure to prevent harassment cannot lie in the absence of a finding of actual harassment, <u>Trujillo v. North Co. Transit Dist.</u>, 63 Cal. App. 4th 280, 288-89 (1998). Amtrak argues McKinzy does not present sufficient evidence of harassment. As explained above, McKinzy has presented evidence upon which a reasonable jury could find Amtrak liable for sexual harassment by a supervisor. Accordingly, Amtrak's motion for summary judgment on this claim is denied.

D. Violation of Public Policy

Amtrak construes McKinzy's third cause of action for "Violation of Public Policy" as a claim for unlawful discharge in violation of public policy. McKinzy alleges that she was discharged because of her complaints about sexual harassment and discrimination. Compl. at ¶ 11. Amtrak argues that it is entitled to summary judgment because McKinzy's underlying claims of sexual harassment and discrimination are unsupported. However, as noted above, McKinzy has provided sufficient evidence of Amtrak's liability for sexual harassment by a supervisor.

18

United States District Court
For the Northern District of California

Nevertheless, summary judgment is warranted on this claim because McKinzy admits that she did not complain about the harassment to Sturken, Herndon and the Human Resources Department until after she received notice of her termination.  Therefore, Amtrak could not have decided to terminate McKinzy based on her complaints.

E. Breach of Covenant of Good Faith and Fair Dealing

McKinzy's second cause of action is for breach of the covenant of and good faith and fair dealing based on Amtrak's permitting and failing to prevent sexual harassment.  The terms and conditions of employment create a species of contract between an employer and employee, such that a covenant of good faith and fair dealing is implied.  Foley v. Interactive Data Corp., 47 Cal. 3d 654, 683-84 (1988).

Defendants rely upon Smith v. City and County of San Francisco, 225 Cal. App. 3d 38 (1990), to argue that a claim for breach of the implied covenant of good faith and fair dealing may not be stated where there is no implied-in-fact contract. However, McKinzy was employed by Amtrak and the employee handbook Amtrak provided to her includes a provision stating Amtrak's policy barring sexual harassment.  This evidence supports the existence of an agreement by Amtrak to provide McKinzy with a harassment-free workplace.  Foley, 47 Cal. 3d at 680 ("In the employment context, factors apart from consideration and express terms may be used to ascertain the existence and content of an

employment agreement, including the personnel policies or practices of the employer.").

Nevertheless, McKinzy's claim fails because she lacks evidence of a breach of the covenant.  The obligation imposed by the covenant of good faith and fair dealing "is measured by the provisions of the particular agreement at issue." <u>Kuhn v. Department of General Services</u>, 22 Cal. App. 4th 1627, 1637 (1994).  "In essence, it is an implied promise that neither party will take any action extraneous to the defined relationship between them that would frustrate the other from enjoying the benefits under the agreement to which the other is entitled." <u>Id.</u> at 1637-38.  McKinzy admits that Amtrak informed her in training about several avenues for reporting sexual harassment. Furthermore, McKinzy admits that she never actually complained to Amtrak authorities about the harassment prior to her termination. Thus, McKinzy has insufficient evidence to show that Amtrak took action to interfere with her enjoyment of a harassment-free workplace.

Summary judgment as to McKinzy's claim for breach of the covenant of good faith and fair dealing is granted in favor of Amtrak.

F. Negligent Infliction of Emotional Distress

Amtrak argues that McKinzy's claims for negligent and intentional infliction of emotional distress should be summarily

United States District Court
For the Northern District of California

dismissed because they are preempted by the Federal Employers'

Liability Act, 45 U.S.C. § 51, et seq.

The FELA makes a railroad common carrier in interstate commerce liable in damages to any person suffering injury while that person is employed by such carrier in such commerce.[8]  "In 1906, Congress enacted the FELA to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees." Atchison, Topeka and Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 561 (1987).  "A primary purpose of the Act was to eliminate a number of traditional defenses to tort liability and to facilitate recovery in meritorious cases."  Id.  Under the FELA, "an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business

---

[8] The FELA, 45 U.S.C. § 51, states in relevant part

Every common carrier by railroad while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

at the time of commencing such action."  45 U.S.C. § 56.  The

"FELA provides the sole and exclusive remedy for injured employees

of railroad carriers engaged in interstate commerce. . . 'such

liability can neither be extended nor abridged by common or

statutory laws of the State.'"  Wildman v. Burlington Northern R.

Co., 825 F.2d 1392, 1395 (9th Cir. 1987).

Supreme Court authority cited by Amtrak holds that claims for

negligent infliction of emotional distress are cognizable under

the FELA.  Consolidated Rail Corporation v. Gottshall, 512 U.S.

532, 549-50 (1994) (holding that "claims for damages for negligent

infliction of emotional distress are cognizable under FELA").

Defendants do not argue that McKinzy's claim cannot be pursued

under the FELA.  Accordingly, McKinzy may pursue her claim for

negligent infliction of emotional distress, although the claim

will be governed by the FELA, not California law.[9]

---

[9] The Ninth Circuit has stated that, under the FELA, an
employer may be liable for the intentional misconduct of an
employee on a theory of direct negligence.  Taylor v.
Burlington Northern R. Co., 787 F.2d 1309, 1314 (9th Cir.
1986).  That is, "an employer is liable if it fails to
prevent reasonably foreseeable danger to an employee from
intentional or criminal misconduct."  Id. at 1315 (citing
Harrison v. Missouri Pacific Railroad, 372 U.S. 248 (1963)
(per curiam)).  However, Defendants have not argued that
McKinzy will be unable to meet this standard.  Nor have they
addressed whether, under the FELA, harassment by a purported
supervisor is imputed to the employer in a claim for
negligent infliction of emotional distress.

United States District Court
For the Northern District of California

G. Intentional Infliction of Emotional Distress

Amtrak argues that the FELA precludes McKinzy's claim for intentional infliction of emotional distress.  In <u>Abate v. Southern Pacific Transp. Co.</u>, 993 F.2d 107, 112 (5th Cir. 1993), the case upon which Amtrak relies, the Fifth Circuit held that the FELA preempted the plaintiff's state law claim for "infliction of emotional distress by outrageous conduct."  <u>Abate</u> does not hold that a claim for intentional infliction of emotional distress is not actionable under the FELA.  The parties do not point to any controlling authority addressing this issue.  However, in <u>Higgin v. Metro-North R.R. Co.</u>, 318 F.3d 422, 425 (2nd Cir. 2003), a sexual harassment case, the Second Circuit held that claims of intentional infliction of emotional distress are actionable under the FELA.  Defendants do not argue that Plaintiff cannot pursue this claim under the FELA, although the claim will be governed by the FELA, not California law.[10]

Therefore, summary judgment in favor on Amtrak on this claim is denied.

H. Negligent Hiring, Supervision and Training

Summary judgment in favor of Amtrak on McKinzy's claim for negligent hiring, training and supervision is warranted because

---

[10] As noted earlier, the Ninth Circuit has indicated that in certain circumstances, under the FELA, an employer may be liable for the intentional misconduct of an employee.  <u>Taylor</u>, 787 F.2d at 1309.

McKinzy has not pointed to evidence that Amtrak was negligent in its training, hiring or supervision of Hubbard.

II. Claims Against Hubbard

Defendants assert that the FELA preempts McKinzy's common law claims for infliction of emotional distress, assault and battery against Hubbard.  However, none of the authorities cited by Defendants demonstrates that the FELA precludes an employee's individual liability for common law tort claims.  The FELA states, "Every common carrier by railroad while engaging in commerce . . . shall be liable in damages" for negligence. 45 U.S.C. § 51.  It does not provide the exclusive remedy against individuals who are employees of railroad companies.

A. Intentional Infliction of Emotional Distress

Defendants argue that McKinzy lacks evidence sufficient to proceed on her claim against Hubbard for intentional infliction of emotional distress.  "A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  Kelley v. Conoco Cos., 196 Cal. App. 4th 191, 215 (2011).  "A defendant's conduct is outrageous when it is so extreme as to exceed all

United States District Court
For the Northern District of California

bounds of that usually tolerated in a civilized community."  Id. (internal quotation marks omitted).

Defendants' argument that Hubbard is entitled to summary judgment is limited to the first element of McKinzy's claim for intentional infliction of emotional distress.  A jury could find that Hubbard's highly inappropriate comments, combined with the alleged offensive touching, rise to the level of extreme or outrageous conduct.

Summary judgment in favor of Hubbard on McKinzy's claim for intentional infliction of emotional distress is denied.

B. Negligent Infliction of Emotional Distress

Defendants' sole argument that McKinzy cannot establish a claim against Hubbard for negligent infliction of emotional distress is that she cannot show "negligent conduct" by Hubbard because she cannot prove that he negligently touched her.  Amtrak misunderstands the nature of the claim, which is that Hubbard's conduct was intentional but that he was negligent with respect to causing her emotional harm.  Summary judgment as to this claim is denied.

C. Assault

An assault is an act committed by a defendant with the intent to cause apprehension of an immediate injury coupled with a reasonable apprehension of an immediate touching.  Defendants correctly point out that the evidence forecloses a claim for assault because McKinzy testified that she did not see Hubbard as

he approached her. Summary judgment in favor of Hubbard as to the assault claim is granted.

D. Battery

"A battery is any intentional, unlawful and harmful contact by one person with the person of another . . . A harmful contact, intentionally done is the essence of a battery." Ashcraft v. King, 228 Cal. App. 3d 604, 611 (1991). "A contact is 'unlawful' if it is unconsented to." Id. Accordingly, the elements for a claim for battery are (1) the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or offend him or her; (2) that the plaintiff did not consent to the touching; (3) that the plaintiff was harmed or offended by the defendant's conduct; and (4) that a reasonable person in the plaintiff's situation would have been offended by the touching. Judicial Council of California Civil Jury Instructions (2012), CACI No. 1300.

Contrary to Defendants' assertion, McKinzy's testimony that she did not see Hubbard touch her does not preclude her from proving that he intentionally touched her body. Defendants' brief acknowledges that the intent necessary to constitute battery is not intent to cause harm, but intent to do the act that causes harm. McKinzy also testified that when she asked why Hubbard touched her, he responded that he did it because he felt like it. That Hubbard denies having touched McKinzy in an improper manner

raises a material dispute as to whether a battery occurred.

Summary judgment as to McKinzy's battery claim is denied.

    E. Punitive Damages

    Defendants point to no authority for the proposition that the FELA shields Hubbard from a claim for punitive damages made against him as an individual. Defendants assert in a conclusory fashion that McKinzy will be unable to present evidence sufficient to recover punitive damages. Defendants have failed to demonstrate the absence of a material, factual dispute as to whether McKinzy is entitled to punitive damages.

III. Motion to Continue Discovery

    This Court's September 28, 2010 case management order set June 28, 2011 as the deadline for fact discovery. On June 28, 2011 McKinzy moved to continue the discovery deadline based on a generalized assertion that her child has had health problems. An extension of the time period for discovery is unwarranted given the limited nature of the dispute presented in this case, the length of time allowed for discovery, McKinzy's lack of diligence in pursuing discovery, and her vague explanation for why she was unable to pursue discovery earlier. McKinzy's motion for an extension is denied.

IV. Motion for Relief from Pretrial Scheduling Order

    Defendants request a sixty day continuance of the final pretrial conference and the trial date based on its recent substitution of counsel. The facts in dispute in this case are

limited, as are the legal issues involved.  Furthermore, Defendants substituted counsel at a late date by their own volition, knowing the trial schedule.  Accordingly, good cause for a continuance has not been established.  Defendants' motion for relief is denied.

CONCLUSION

Amtrak and Hubbard's joint motion for summary judgment is denied in part and granted in part.  Docket No. 48.  Summary judgment in favor of Amtrak is granted with respect to McKinzy's claims for sex discrimination, breach of the covenant of good faith and fair dealing, unlawful discharge in violation of public policy, and negligent hiring, training and supervision.  McKinzy's claims against Amtrak for sexual harassment, and negligent and intentional infliction of emotional distress will proceed to trial.  Summary judgment in favor of Hubbard is granted with respect to McKinzy's claim for assault.  However, Hubbard's motion for summary judgment is denied as to the claims for intentional and negligent infliction of emotional distress, battery and punitive damages.

McKinzy's motion to extend discovery is denied.  Docket 56. Defendants' motion for relief from the pretrial scheduling order is denied.  Docket No. 81.

The parties shall appear for a final pretrial conference on January 11, 2012 at 2:00 pm.  Trial shall begin on January 23, 2012 at 8:30 am.  It appears that a jury trial has been waived by

United States District Court
For the Northern District of California

failure to demand jury timely.  If either party disagrees, they must brief the issue as a motion in limine.  Deadlines and requirements related to the pretrial conference are provided in the Court's standing order for pretrial preparation, attached to this Order.

The case is referred to Magistrate Judge Jacqueline Scott Corley to conduct a further settlement conference if she has any availability between now and the trial date.  If she does, Judge Corley will inform the parties of the date and the parties must attend.

IT IS SO ORDERED.

Dated: 12/23/2011

CLAUDIA WILKEN
United States District Judge